

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESUS EDUARDO SANCHEZ, | § | No. 08-14-00012-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court No. One |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC# 20120D00479) |
| | § | |

## **O P I N I O N**

Jesus Eduardo Sanchez was convicted of two counts of unlawful delivery of a controlled substance. He was sentenced to probated, three-year prison terms for each offense, and fined $10,000. Appellant contends on appeal that the trial court: (1) abused its discretion in limiting his cross-examination of a prosecution witness; (2) erred in submitting a jury charge that denied his constitutional right to a unanimous verdict; and (3) improperly commented on the weight of the evidence during the punishment phase of trial. Finding no error, we affirm.

## BACKGROUND

While working as an undercover narcotics agent, Detective Jaime Flores obtained a cell phone number from a Victor Ortega, for an individual that Ortega identified as "Krusty," for purposes of purchasing narcotics. On November 10, 2011, using that number, Flores contacted

"Krusty," whom he later identified as Appellant, and arranged to purchase "ecstasy pills"[1] from him at Ortega's residence on Alcott Road in El Paso that same day.

Flores went to the Alcott residence and was allowed to enter the residence by Appellant. While at the residence, Flores purchased "four small white tablet pills" from Appellant for $10 per pill. Flores observed Appellant take the pills from his pocket, and testified Appellant gave him the pills in a "hand-to-hand exchange." Flores did not arrest Appellant because his department was conducting an ongoing narcotics investigation involving the Alcott residence. After obtaining the four pills, Flores returned to the police station, where he tested and weighed them, determining that he had purchased 1.18 grams of MDMA. An independent forensic lab analysis confirmed those results.

Flores's second encounter with Appellant came a month later, on December 9, 2011, at a different residence located on Homestead in El Paso County. Flores had contacted Ortega earlier that same day by phone and arranged to purchase narcotics at the Homestead location. Flores parked in front of the residence, and both Appellant and Ortega walked out of the residence to his vehicle, where the two men spoke to him about the purchase. After negotiating a price, Flores purchased two "dubs" or "bindles" of cocaine for $40. Flores observed Appellant hand the two bindles of cocaine to Ortega, who then handed the bindles to Flores. Once again, Flores declined to arrest either Appellant or Ortega, due to the ongoing investigation. After making this purchase, Flores took the bindles to the police station where he had them tested and weighed, determining

---

[1] Ecstasy is the street name for methylenedioxymethamphetamine, or MDMA. MDMA is a "Penalty Group 2" controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(1) (West Supp. 2015).

that they contained 1.1 grams of cocaine.[2]   An independent forensic lab analysis confirmed those results.

Both times Flores purchased the narcotics, he was working with another undercover agent, Detective Luis Soto, who was assigned to observe the purchases from a distance in order to help ensure Flores's safety and to verify that a narcotics purchase had taken place.   Soto testified that he had observed Flores enter the Alcott residence on November 10, 2011, and had also observed Flores leave the residence approximately a minute later.   Soto did not actually observe the narcotics purchase on that occasion, because it occurred inside the home.   Soto also confirmed that he observed Flores's encounter with Appellant and Ortega outside the Homestead residence on December 9, 2011.   Soto was parked a few hundred feet away from the residence when he saw Appellant and another individual exit the Homestead residence and approach Flores's vehicle that was parked in front of the residence.   At trial, Soto testified he was certain that Appellant was the same individual he observed approach Flores's vehicle that day.

Flores testified that on January 6, 2012, his department set up surveillance at the Alcott residence, in part to determine Appellant's identity.   They observed Appellant leave the residence early that morning.   Shortly thereafter, Appellant was pulled over by another officer as part of a routine traffic stop, who took a photograph of Appellant with his cell phone, which he sent to Flores in order to confirm Appellant's identity.   Flores testified at trial that, after reviewing the photograph and observing Appellant at trial, he was 100 percent certain that Appellant was the same person he had purchased narcotics from in November and December 2011.

---

[2] Cocaine is a "Penalty Group 1" controlled substance.   TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (West 2010).

3

After the traffic stop, Appellant was taken to the police station, where he was placed under arrest on charges stemming from the two incidents in which he had allegedly sold narcotics to Flores. Later, a search was conducted of the Alcott residence, and twenty grams of cocaine were found.

Appellant was initially charged with three counts: including two counts of unlawful delivery of a controlled substance based on the incidents in November and December 2011, and one count of possession of a controlled substance based on the cocaine found in the Alcott residence during the January 6, 2012 search. Shortly before trial, however, the State moved to dismiss the third count. After that count was dismissed at a pretrial conference, the State prosecuted Appellant only on the first two counts in the indictment concerning the unlawful deliveries occurring in November and December 2011.

## DISCUSSION

### The Trial Court did not Abuse its Discretion in Limiting Cross-Examination

In his first issue, Appellant contends the trial court abused its discretion when it limited the scope of his cross-examination of Detective Flores, by not allowing him to question Flores regarding certain misstatements Flores allegedly made in the complaint affidavit he swore out in support of Appellant's arrest for the third count in the indictment, which had been dismissed prior to trial. We conclude the trial court did not abuse its discretion in limiting the cross-examination of Flores, because Appellant's proposed cross-examination sought to impeach Flores's credibility on a collateral matter.

### *Background*

This issue has its genesis in the pretrial conference that took place shortly before trial at which the trial court granted the State's motion to dismiss Count Three in the indictment, which

4

charged Appellant with possession of the narcotics that were found during the search of the Alcott residence on January 6, 2012. After Count Three was dismissed, Appellant moved to exclude any reference to that count, as well as to the narcotics that were found during the search of the Alcott residence. The trial court granted Appellant's motion, initially ruling that the State would not be permitted to "get into anything that happened on January 6th of 2012[.]" However, at the parties' urging, the trial court amended its ruling, stating that the parties would be allowed to refer to the January 6 traffic stop as far as it related to Flores's identification of Appellant as the person from whom Flores had previously purchased narcotics. The trial court emphasized, however, that "nothing that has to do with the possession of the drugs on January 6th of 2012 comes in."

Appellant's defense at trial primarily consisted of attempting to establish that Flores had mistakenly identified Appellant as the person from whom he had purchased narcotics in November and December 2011, and that Flores had instead purchased the narcotics from the mysterious individual known as "Krusty." In his attempt to discredit Flores's credibility and to cast doubt on Appellant's identification by Flores, Appellant pointed out to the jury certain errors that Flores had made in his sworn complaint affidavit in support of Appellant's arrest for the November 2011 narcotics purchase, as well as in his police report pertaining to that incident.

Appellant next turned his attention to the affidavit that Flores had sworn out in support of the warrant for the search that took place at the Alcott residence on January 6, 2012. Although arguably in violation of the trial court's ruling on the motion in limine, the State did not object to this line of questioning. In particular, Appellant elicited testimony from Flores regarding the following errors that were contained in that affidavit:

- Flores stated that Appellant had sold him ecstasy on more than one occasion. At trial, Flores clarified that he had intended to report

5

that Appellant had sold him *narcotics* on more than one occasion, *i.e.*, ecstasy in November 2011 and cocaine in December 2011.

- Flores mistakenly stated that the November 2011 sale took place outside the Alcott residence, when in fact it took place inside the residence.

Appellant also asked Flores, without objection from the State, whether he was present when the search warrant was executed at the Alcott residence on January 6, 2012. Flores explained that he was not present at the search due to a department policy that prohibited undercover agents from attending searches in order to protect their identities.

Appellant then began questioning Flores about the complaint affidavit he had sworn out for Appellant's arrest on the already-dismissed third count in the indictment, which had charged Appellant with possession of the cocaine found in the Alcott residence during the January 6 search (hereinafter the "complaint affidavit"), hoping to point out a factual inconsistency contained in that affidavit whether Appellant was present at the Alcott residence when the search took place. At that point, the State objected that Appellant's questioning violated the trial court's earlier ruling on Appellant's motion in limine prohibiting the admission of any evidence relating to the search of the Alcott residence.

The trial court held a hearing outside the presence of the jury on the State's objection, at which Appellant explained that he believed Flores's complaint affidavit contained an inherent factual inconsistency that he wished to point out to the jury for impeachment purposes. In particular, Appellant noted that on the first page of the affidavit, Flores stated that Appellant was arrested after he left the Alcott residence on the morning of the search (before the search warrant was executed), but on the second page of the affidavit, Flores stated that Appellant and Ortega were observed to be in bed together at the Alcott residence at the time the search warrant was

6

executed. Appellant's attorney contended this error demonstrated Flores's deficient memory and his poor recordkeeping abilities. Appellant explained that he wanted to question Flores on a limited basis regarding that error to further impeach Flores's credibility, to call into question Flores's ability to accurately recall and record events, and to cast doubt on Flores's ability to reliably identify Appellant as the person from whom he had purchased narcotics on the two prior occasions.

The State objected to the admission of any evidence pertaining to the complaint affidavit, asserting that it would violate the court's motion in limine order and because it related only to the already-dismissed third count in the indictment, and was therefore irrelevant to the two counts for which Appellant was being prosecuted.

The trial court ultimately ruled that it would not permit either party to present any additional evidence pertaining to the complaint affidavit or to the search of the Alcott residence, because it believed that any such evidence was relevant only to the already-dismissed third count in the indictment, and was not relevant to the two counts for which Appellant was standing trial.

### Standard of Review and Applicable Law

A criminal defendant has a constitutional right to present a complete and meaningful defense at trial, and is denied that right when a "trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *See Easley v. State,* 424 S.W.3d 535, 540 (Tex.Crim.App. 2014) (quoting *Walters v. State,* 247 S.W.3d 204, 219 (Tex.Crim.App. 2007)); *see also Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987) (State's evidentiary rule that excluded all post-hypnotic testimony prevented a defendant from testifying in

7

her own behalf at trial, and from thereby telling her own "version of the events for which she is on trial," deprived the defendant of her constitutional rights to a fair trial and to testify in her own defense).

This right, however, is not unlimited. As the United States Supreme Court cautioned in *Rock*, the "right to present relevant testimony is not without limitation[,]" and that right "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process[,]'" so long as the restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 55-56, 107 S. Ct. at 2711. The Texas Court of Criminal Appeals has similarly recognized that a defendant's constitutional right to confront witnesses, including the right to cross-examine witnesses and to impeach witnesses with relevant evidence, is not unlimited, and a trial court "maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000). "Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence." *Id.* In determining whether evidence must be admitted under the Confrontation Clause, the court must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *Id.*

A trial court's admission or exclusion of evidence is reviewed for an abuse of discretion. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). We will not reverse unless the trial court's evidentiary determination falls outside the zone of reasonable disagreement, or unless the trial court has acted without reference to any rules or guiding principles. *Id.*; *Montgomery v.*

8

*State,* 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).

### Impeachment on a Collateral Matter

The primary reason Appellant sought to cross-examine Flores regarding the complaint affidavit was to impeach his credibility by convincing the jury Flores was a poor "historian," who displayed "marginal competence" in his work, and who was therefore not to be believed when it came to identifying Appellant as the person from whom he purchased narcotics in November and December 2011. While a party is entitled to impeach a witness's credibility with relevant evidence, the "general rule [is] that a witness may not be contradicted or impeached as to immaterial or collateral matters." *Sherman v. State*, No. 08-13-00105-CR, 2015 WL 1962815, at *3-4 (Tex.App. – El Paso April 30, 2015, pet. ref'd) (not designated for publication) (citing *Ramirez v. State,* 802 S.W.2d 674, 675 (Tex.Crim.App. 1990)); *see* TEX.R.EVID. 608(b); *see also Bates v. State*, 587 S.W.2d 121, 141-42 (Tex.Crim.App. 1979) (op'n on rehearing) (when cross-examining to "try the credit of a witness, only general questions can be put, and [the witness] cannot be asked as to any collateral and independent fact merely with a view to contradict him afterwards by calling another witness").

The test to determine whether a matter is collateral is "whether the cross-examining party would be entitled to prove it as part of the case." *Sherman,* 2015 WL 1962815, at *3-4; *see also Ramirez*, 802 S.W.2d at 675 ("The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea."). The subject matter of Appellant's proposed cross-examination related to a mistake that Flores made in drafting the complaint affidavit for Appellant's arrest on the third count in the indictment, which was dismissed prior to trial. Any mistakes Flores made in that complaint

9

affidavit were irrelevant to the two counts for which Appellant was being prosecuted, and Appellant would not have been entitled to present evidence of those mistakes in his case in chief. Therefore, the matters Appellant proposed to raise on cross-examination were collateral matters and not the subject of proper impeachment.

There are exceptions to the general rule that a party is not entitled to impeach a witness on a collateral matter. For example, when a witness testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding, the witness may be impeached by evidence contradicting that testimony showing he is in error as to that particular matter. *Sherman*, 2015 WL 1962815, at *4. In such instances, the witness is said to have opened the door to impeachment, by "gratuitously raising the collateral matter," thereby allowing the opposing party to "impeach the witness on the matter so raised." *Id.* (citing *Hammett v. State,* 713 S.W.2d 102, 106 n.4 (Tex.Crim.App. 1986)). A similar exception exists when a witness leaves a false impression concerning a collateral matter. In that case, the opposing party is allowed to correct the false impression regardless of its collateral nature. *Ramirez,* 802 S.W.2d at 675-76.

In the present case, however, the State never questioned Flores about any issues relating to the complaint affidavit. Therefore, no errors existed in his testimony for which he could be impeached. Further, Flores did not gratuitously bring up any issues relating to the complaint affidavit in his testimony, and thus he did not create any false impressions about the affidavit that required correction.[3] Therefore, neither of those exceptions applies.

---

[3] We disagree with Appellant's contention that the allegedly contradictory statements contained in Flores's affidavit could be considered "prior inconsistent statements," which would have been admissible for impeachment under the Texas Rules of Evidence. The rules allowing a witness to be impeached by a prior inconsistent statement are directed at impeaching a witness's *trial testimony*. *See Lopez v. State,* 86 S.W.3d 228, 230 (Tex.Crim.App. 2002). Flores did not testify at trial about what occurred when the search warrant of the Alcott residence was executed. Therefore, any inconsistent statements contained in his affidavit would not be admissible for impeachment purposes.

10

A defendant also generally has a broad right to impeach the credibility of a prosecution witness based on matters that involve possible "ill feeling, bias, motive, interest, or animus" against a defendant, and such matters are never considered "collateral or irrelevant" to a defendant's inquiry. *Billodeau v. State,* 277 S.W.3d 34, 42–43 (Tex.Crim.App. 2009); *see also Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App. 1996) (defendants are generally entitled to cross-examine a witness by inquiring into any area which is reasonably calculated to show a witness's motive, bias, or interest in testifying). There is an important distinction, however, between an attack on the general credibility of a witness and a more particular attack on credibility that reveals possible bias, prejudice, or ulterior motive of the witness. *Hammer v. State,* 296 S.W.3d 555, 562 (Tex.Crim.App. 2009). In the present case, Appellant does not suggest that Flores had any bias or prejudice against him or any ulterior motives in testifying against him. Instead, Appellant's argument focused solely on whether Flores was a "poor historian" or a marginally competent record keeper, which called into question his general credibility. Therefore, there is no basis for applying this exception.

Accordingly, we conclude that Appellant's proposed cross-examination of Flores involved a collateral matter, and was not subject to any exceptions to the rule that a witness may not be impeached on a collateral matter. We therefore conclude that the trial court did not abuse its discretion in limiting Appellant's cross-examination of Flores.

### *Any Error did not Deprive Appellant of his Substantial Rights*

Even if we were to conclude the trial court erred in limiting Appellant's cross-examination, the trial court's decision would not constitute reversible error. Rule 44.2(b) provides different standards for reversal depending on whether an error is constitutional. If the "appellate record in

11

a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). However, when evidence is excluded in a manner that does not implicate a defendant's constitutional rights, any error in excluding the evidence is reviewed under the standards set forth in Rule 44.2(b). *See Walters v. State,* 247 S.W.3d 204, 219 (Tex.Crim.App. 2007). Under this Rule, an appellate court must disregard non-constitutional error that does not affect the appellant's substantial rights. TEX.R.APP.P. 44.2(b). Substantial rights are not affected if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *See Coble v. State,* 330 S.W.3d 253, 280 (Tex.Crim.App. 2010); *Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).

The erroneous exclusion of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b). *Walters*, 247 S.W.3d at 219. An error in excluding evidence only rises to the level of constitutional error when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* Appellant contends the exclusion of his proposed cross-examination of Flores regarding the mistakes he made in the complaint affidavit formed a vital portion of his case, and effectively deprived him of his right to present a complete or meaningful defense of whether Flores misidentified him as the person from whom he had purchased narcotics. We disagree. To the contrary, Appellant was permitted to extensively cross-examine Flores with regard to his identification of Appellant as the person from whom he had purchased narcotics in November and December 2011, and was further permitted to extensively cross-examine Flores's partner,

Detective Soto, regarding his identification of Appellant as the individual he observed selling narcotics to Flores in December 2011. Appellant was also permitted to extensively cross-examine Flores regarding the errors he made in his police reports and affidavits with regard to the two incidents for which Appellant was tried.[4] Also, the trial court gave Appellant wide latitude to attack Flores's credibility during his opening statement and in his closing arguments, allowing counsel to go so far as to refer to Flores as being a "professional liar in his undercover operations." We conclude that any error in excluding Flores's testimony did not deprive Appellant of his right to present a meaningful defense, and that any error in excluding Flores's testimony was therefore non-constitutional.

Applying the standard for non-constitutional error as set forth in TEX.R.APP.P. 44.2(b), we conclude Appellant's substantial rights were not affected by the trial court's refusal to allow Appellant to cross-examine Flores concerning the mistakes he made in the complaint affidavit on the dismissed count. Appellant was allowed to repeatedly attempt to impeach Flores's credibility with the mistakes that he made in his paperwork with regard to the charges for which he was prosecuted, and to thereby call into question Flores's identification of Appellant as the individual

---

[4] For example, Appellant elicited testimony at trial from Flores as follows:

- In his sworn complaint affidavit, Flores initially stated that the purchase occurred in January 2011, rather than in November 2011. At trial, Flores explained that he had likely used a template to type up the complaint affidavit, which had the January date in it, and that he had simply forgotten to change the month in one portion of the affidavit. He pointed out that he had consistently used the correct November 2011 date in the remainder of the affidavit.

- In that same affidavit, Flores listed the wrong address for the Alcott residence where the November narcotics purchase allegedly took place, mistakenly stating that the address was 12860 Alcott Road, rather than 12869 Alcott Road. Flores avowed at trial that this was simply a typographical error.

- In his police report pertaining to the November 2011 narcotics purchase, Flores failed to state that a ten-year-old child was purportedly present at the Alcott residence at the time of the purchase, despite testifying to that at trial.

13

from whom he purchased narcotics in both November and December 2011. Further, the State presented ample evidence establishing that Appellant was the individual from whom Flores purchased narcotics. Flores identified Appellant as that individual from the photograph taken during the traffic stop on January 6, 2012, and testified that he was 100 percent certain that Appellant was the individual from whom he had purchased narcotics in November and December 2011. Detective Soto also was able to confirm Flores's identification of Appellant as being the person he observed participate in the narcotics sale in December 2011.

More important, the excluded testimony regarding what occurred during the January 6 search was unrelated to Flores's identification of Appellant as the person he purchased the narcotics from on those prior occasions in November and December 2011. Moreover, Flores testified that he was not even present when the January 6 search of the Alcott residence took place. Therefore, any erroneous statements that Flores made in the complaint affidavit concerning Appellant's whereabouts at the time of the search were not related to his ability to identify Appellant. At most, the statements were a mischaracterization of events that were reported to him by other law enforcement agents who were in fact present at the search. While the excluded testimony may have provided additional evidence that Flores was a sloppy record keeper, prone to making mistakes in his paperwork, it had nothing to do with whether Flores was able to correctly identify Appellant as the person from whom he had previously purchased narcotics. After reviewing the entire record, we can say with fair assurance that the trial court's decision to exclude Flores's testimony did not influence the jury's verdict. Issue One is overruled.[5]

_____

[5] We reject the State's contention that Appellant failed to preserve error on this issue by failing to make an offer of proof containing either the complaint affidavit or a bill containing both the questions counsel would have asked Flores and Flores's answers. Appellant's counsel provided a concise statement to the trial court in which he explained that he intended to ask Flores about the two conflicting statements contained in the complaint affidavit in an attempt to

14

**The Trial Court's Jury Charge did not Deny Appellant his Right to a Unanimous Verdict**

In his second issue, Appellant contends the trial court violated his constitutional right to a unanimous verdict by charging the jury in the disjunctive that it could convict Appellant of delivery of a controlled substance if it found that Appellant had committed that offense in any of three alternate ways, *i.e.*, by an actual transfer of a controlled substance to Flores, by a constructive transfer of a controlled substance to Flores, or by making an offer to sell a controlled substance to Flores. Appellant contends the prosecutor compounded this problem when she advised the jury during closing argument that they were not required to agree on which of the three alternate methods Appellant used to commit the crime, and that their verdict did not have to be unanimous on any particular means, but that instead they simply had to agree that he committed the offense of delivery, regardless of the means used.

We conclude the jury was not required to reach a unanimous verdict with regard to which of the three alternate means Appellant used to commit the offense of delivery, and was instead required only to unanimously agree that Appellant committed the offense of delivery. Therefore, Appellant's right to a unanimous verdict was not violated either by the trial court's instruction or by the prosecutor's comments.

### *Standard of Review and Applicable Law*

Appellant did not object to the trial court's jury charge or to the prosecutor's argument, and

---

impeach Flores's credibility and to raise a question in the jurors' minds regarding Flores's ability to identify him as the person from whom he purchased narcotics. This was sufficient to preserve error. *See Moosavi v. State,* 711 S.W.2d 53, 56 (Tex.Crim.App. 1986) (trial counsel made a sufficient offer of proof where he made a recitation of the testimony he expected to elicit from a witness, and where it was "clear from the colloquy in the trial court that the trial judge knew precisely what he was excluding"). We further conclude that Appellant is not "estopped" from raising this issue on appeal based on invited error. Appellant did not invite the trial court to make the specific ruling about which he is now complaining. Accordingly, the doctrine of invited error does not bar Appellant from complaining about this ruling on appeal. *See Heidelberg v. State,* 36 S.W.3d 668, 671 (Tex.App. – Houston [14th Dist.] 2001, no pet.) (appellate review was not precluded where party was not shown to have invited the trial court to commit the specific error raised on appeal).

15

never raised any issue at trial regarding whether his right to a unanimous verdict had been violated. Although an objection is generally required in the trial court to preserve error for appellate review, an exception exists when a defendant raises an issue regarding the jury charge. *See Kirsch v. State,* 357 S.W.3d 645, 649 (Tex.Crim.App. 2012). Any allegations involving "jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Id*.

Appellate review of a purported error in a jury charge involves a two-step process. The first step is to determine whether the jury instruction is erroneous. *Id*. Second, if error occurred, then an appellate court must analyze that error for harm. *Id.* Upon finding error in the jury charge, there are separate standards of review depending on whether the defendant timely objected. *Marshall v. State,* 479 S.W.3d 840, 843 (Tex.Crim.App. 2016) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)). If the defendant timely objected to the jury instruction, reversal is required if there was some harm to the defendant. *Id.* However, if the defendant did not timely object, then reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Id*.; *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004).

Before conducting an egregious harm analysis for the unobjected-to jury instruction, we must first decide whether the instruction itself was actually erroneous. *See, e.g., Tolbert v. State*, 306 S.W.3d 776, 779 (Tex.Crim.App. 2010). If the jury charge is not found to be erroneous, we need not conduct a harm analysis. *Cortez v. State,* 469 S.W.3d 593, 598 (Tex.Crim.App. 2015).

***The Jury Charge did not Deprive Appellant of his Right to a Unanimous Verdict***

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo v. State,* 175 S.W.3d 738, 745

16

(Tex.Crim.App. 2005); *Pollock v. State,* 405 S.W.3d 396, 404 (Tex.App. – Fort Worth 2013, no pet.). In order to satisfy the jury unanimity requirement, every juror must agree that "the defendant committed the same, single, specific criminal act." *Pollock,* 405 S.W.3d at 404 (citing *Ngo,* 175 S.W.3d at 745).

However, this does not mean the jury must unanimously agree that the defendant committed the crime in "one specific way." *Holton v. State,* __S.W.3d__, 2015 WL 4878608, at *3 (Tex.App. – El Paso Aug. 14, 2015, no pet.) (citing *Pollock*, 405 S.W.3d at 404); *see also Landrian v. State,* 268 S.W.3d 532, 535 (Tex.Crim.App. 2008). It is well-settled that a jury is only required to unanimously agree on each "element" of the offense, and is not required to agree on the "manner and means" by which the defendant committed the offense. *Holton*, 2015 WL 4878608, at *3 (citing *Jefferson v. State,* 189 S.W.3d 305, 311 (Tex.Crim.App. 2006)). Therefore, the "unanimity requirement is not violated by instructing the jury on alternate theories of committing the same offense[.]" *Id*. (citing *Saenz v. State,* 451 S.W.3d 388, 390 (Tex.Crim.App. 2014)); *see also Jourdan v. State,* 428 S.W.3d 86, 94 (Tex.Crim.App. 2014); *Martinez v. State,* 129 S.W.3d 101, 103 (Tex.Crim.App. 2004). A trial court may therefore submit alternate theories of committing the same offense to the jury in the disjunctive, and the jury may return a general verdict without reaching "agreement on the preliminary factual issues which underlie the verdict." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991).

Appellant was charged with violating two separate provisions in Chapter 481 of the Texas Health & Safety Code, both of which allowed a conviction if a person delivers a controlled substance listed in Penalty Group 1 or 2. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112, 481.113 (West 2010 & Supp. 2015). The Code defines the term "deliver" to mean "to transfer,

17

actually or constructively, to another a controlled substance," as well as "offering to sell a controlled substance[.]"  TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West 2010).

The question in this case is whether, when the Legislature provided these three alternate definitions of "deliver," it intended to create three alternate "manner and means" of committing the single offense of delivery of a controlled substance, or whether it intended for the alternate methods of delivery to be considered separate "elements" of the offense itself.  Appellant contends the Legislature intended for them to be separate elements, and that the trial court therefore erred in treating these separate "elements" as being "alternative means," when it instructed the jury in the disjunctive.  *See Richardson v. United States*, 526 U.S. 813, 818-20, 119 S.Ct. 1707, 1710-11 (1999) (a defendant is deprived of his constitutional right to a unanimous verdict if a trial court mistakenly treats separate violations as merely being "alternative means").  We disagree.

Our sister court has rejected a similar argument in *Rodriguez v. State*, 89 S.W.3d 699, 701 (Tex.App. — Houston [1st Dist.] 2002, pet. ref'd).  In *Rodriguez*, the defendant was charged with delivery of a controlled substance (marijuana), and the trial court instructed the jury in the disjunctive that the defendant could be found guilty of "delivery," based on "actually transferring, constructively transferring *or* offering to sell marijuana."  *Id.* at 701 (emphasis in the original). The defendant argued that the trial court's instruction raised the possibility that the jury may have reached a "non-unanimous jury verdict," because the jurors may have disagreed on the method by which he had allegedly committed the offense.  The court in *Rodriguez* concluded, however, that the statute simply set forth three alternative methods for committing the single offense of delivery, and that "the jury need not agree on the method of delivery to convict" the defendant, and instead

18

need only reach a "unanimous verdict of a single delivery of a controlled substance." *Id*. at 702. In particular, the court noted that "[e]ven if half the jury convicted appellant for offer to sell while the other half convicted appellant for constructive transfer, the jury had a unanimous verdict of a single delivery of a controlled substance." *Id.* Accordingly, the court concluded that the trial court properly instructed the jury in the disjunctive that it could convict the defendant of the single offense of delivery under any of the three alternative theories alleged by the State, and that the defendant's right to a unanimous verdict was not violated when the jury returned a general verdict finding the defendant guilty of the offense of delivery without specifying which of the three methods it believed the defendant utilized to commit that offense. *Id*. at 701 (citing *Kitchens*, 823 S.W.2d at 258).

The Texas Court of Criminal Appeals favorably cited *Rodriguez* for the proposition that the offense of delivery of a controlled substance may be committed by any of the alternate means set forth in the Texas Health and Safety Code. *Lopez v. State,* 108 S.W.3d 293, 299-300 (Tex.Crim.App. 2003). In approving the holding in *Rodriguez*, the Court noted that the jury in *Rodriguez* rendered a "permissible general verdict" because the defendant was charged with alternate theories of committing the same offense. *Id.* at 299. The Court further noted that the means set forth in the statute for committing the offense of delivery, *i.e.*, actual transfer, constructive transfer, and the offer to sell, are merely "points along a continuum in the line of drug distribution," that the "gravamen of the offense of delivery is driven by the particular quantity of a particular contraband substance." *Id.* at 297, 299.

In the present case, we similarly conclude that the trial court properly instructed the jury in the disjunctive that it could convict Appellant based on any of the three alternate theories alleged

19

by the State for accomplishing the delivery offenses, and that it properly allowed the jury to return a general verdict, finding Appellant guilty of delivery, without requiring the jury to unanimously agree on which of the alternate theories he was alleged to have committed the offense.[6]

### *Sufficient Evidence Supported the Jury Charge and the Jury's General Verdict*

Although Appellant does not raise the sufficiency of the evidence as a separate issue on appeal, he makes a related argument that because the jury was not required to agree on which of the three alternate means Appellant utilized to commit the delivery offense, his conviction cannot stand unless there was sufficient evidence to support a finding that he committed the offense using *all* three means. He contends that if the evidence does not support a conviction on even one of those theories, he is entitled to an acquittal.

In support of his argument, Appellant correctly points out that the evidence presented at a defendant's trial "must be sufficient to prove that a *particular* offense occurred, and the particular offense must be that for which the defendant was tried." *Miles v. State,* 357 S.W.3d 629, 633 (Tex.Crim.App. 2011) (emphasis in the original). Appellant's conviction, however, does not rest on a theory that was not presented to the jury. To the contrary, the jury was adequately apprised by both the trial court's jury charge and the prosecutor's closing arguments that the State was seeking a conviction based on any one of the three alternate theories of committing a delivery, as alleged in the indictment. Appellant's argument instead rests on the premise that the State was required to present evidence in support of each and every alternate means with which it charged Appellant.

---

[6] Finding no error in the jury charge, we reject Appellant's argument that the prosecutor made an improper jury argument that encouraged the jury to return a non-unanimous verdict. To the contrary, the prosecutor correctly stated the law when she explained to the jurors that they were not required to unanimously agree on which of the alternate means Appellant utilized to commit the delivery offenses.

Our sister court has rejected a similar argument involving a defendant convicted of delivery of a controlled substance. *See Payan v. State,* 199 S.W.3d 380, 383-85 (Tex.App. – Houston [1st Dist.] 2006, pet. ref'd). In *Payan*, the trial court instructed the jury it could find the defendant guilty of delivery of a controlled substance by the three alternate means available under the Texas Health and Safety Code, including delivery by actual transfer, constructive transfer, or by offer to sell. The court concluded the verdict must stand if the evidence supported "*any* of the three alternative manners of delivery,*" as set forth in the jury charge and as alleged in the indictment. *Id.* at 384 (emphasis added); *see also Kitchens,* 823 S.W.2d at 258 (when a jury is properly instructed on alternate theories of committing a single offense, and the evidence is sufficient to support a finding under any of the counts submitted, no error is shown).

In the present case, we find more than ample evidence to support Appellant's conviction of both delivery offenses based on one or more of the three alternate theories that were submitted to the jury. First, with regard to the November 2011 offense, there was sufficient evidence to support a finding that Appellant delivered a controlled substance to Flores through an "actual transfer," as Flores positively identified Appellant as the individual who directly handed him the four ecstasy pills in the Alcott residence on November 10, 2011. *See Heberling v. State,* 834 S.W.2d 350, 354 (Tex.Crim.App. 1992) ("[A]n actual transfer or delivery, as commonly understood, contemplates the manual transfer of property from the transferor . . . *or to the transferee's agents or to someone identified in law with the transferee*."). With regard to the December 2011 incident, there was sufficient evidence to support a finding that Appellant delivered a controlled substance to Flores through a "constructive transfer," based on Flores's testimony that Appellant handed the bindles of cocaine to Ortega, who then handed the bindles to

21

Flores for purchase in Appellant's presence outside the Homestead residence. *See Sims v. State,* 117 S.W.3d 267, 277 (Tex.Crim.App. 2003) (noting that a constructive transfer may take place when the transferor had either direct or indirect control of the substance transferred prior to the alleged delivery, and the transferor knew of the existence of the transferee).

Because the jury was properly instructed on all three possible means under which it could have found Appellant guilty of delivery, and because the evidence supported a conviction on at least one of those theories, we decline to address whether Appellant could have been found guilty based on any of the other alternate theories alleged by the State. We therefore overrule Appellant's second issue.[7]

### The Trial Court did not make an Improper Comment on the Evidence in its Supplemental Jury Instruction

In his third issue, Appellant contends that, when the trial court responded to questions from the jury during its deliberations in the punishment phase of the trial, it improperly commented on the evidence and misled the jury regarding its duties to assess Appellant's punishment. We disagree and conclude the trial court's response to the jury properly stated the law and did not mislead the jury.

During their deliberations in the punishment phase of trial, the jury sent a written note to the trial court:

> Please clarify that the time for both counts as well as fines would be added for a total number. Also, in the case of fines, how long does the defendant have to pay?

The trial court discussed the note with the attorneys before responding. During this discussion, the prosecutor expressed her opinion that the jury was asking whether any sentence would be

---

[7] Having found no error in the trial court's instruction, it is unnecessary to conduct a harm analysis. *Cortez*, 469 S.W.3d at 598.

22

served consecutively or concurrently. The prosecutor pointed out that neither this, nor the amount of time Appellant had to pay a fine, was a matter for the jury's consideration.[8] Defense counsel agreed, but asked the trial court to respond to the jury only by referring the jury back to the court's original jury charge and advising the jury to continue its deliberations by informing the jury that the applicable law had already been submitted to them in the jury charge. Instead over Appellant's objection, the trial court gave the following written instruction to the jury:

> In response to your questions, these are matters that are not for your consideration. Please continue with these instructions along with those already given to you and continue your deliberations.

While defense counsel's objection at trial was not entirely clear,[9] it appears that he objected only to the first sentence in the jury instruction, which advised the jury that the matters it inquired into were not any of its concern, since the remainder of the instruction merely referred the jury back to the original charge, as defense counsel had requested the court to do.

When the trial court responds substantively to a question from the jury during deliberations, that communication amounts to a supplemental jury instruction, and the trial court must follow the same rules for impartiality and neutrality that generally govern jury instructions. *See Daniell v. State,* 848 S.W.2d 145, 147 (Tex.Crim.App. 1993). Accordingly, "the trial court, as a general rule, must limit its answer to setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury." *Lucio v.*

---

[8] The trial court has the exclusive right to decide whether multiple sentences will run consecutively or concurrently. *See Barrow v. State,* 207 S.W.3d 377, 380 (Tex.Crim.App. 2006).

[9] We reject the State's argument that we should decline to consider whether the instruction was erroneous because Appellant did not state a clear legal basis for his objection. Allegations involving "jury charge error must be considered on appellate review regardless of preservation in the trial court." *See Kirsch,* 357 S.W.3d at 649. Accordingly, we must consider whether the instruction was erroneous, and if so, we must then analyze any such error for harm under the proper standard. *Id.*

*State*, 353 S.W.3d 873, 875 (Tex.Crim.App. 2011). Appellant acknowledges that the jury inquired about sentencing matters that were not within the jury's province, and that the trial court's response that those matters were "not for your consideration" was both facially neutral and legally accurate. Appellant points out, however, that even an instruction that is otherwise legally accurate, may nevertheless constitute an improper comment on the weight of the evidence. *See, e.g., Kirsch*, 357 S.W.3d at 652. Appellant apparently believes that by not simply referring the jury back to the original charge, and by instead responding directly to the jury's questions, the trial court made an improper comment on the evidence.

It is well established that when a jury inquires about a matter that has already been the subject of a prior jury charge, it is proper for the trial court to simply refer the jury to the charge already given and advise the jury to continue its deliberations. *See, e.g., Gamblin v. State*, 476 S.W.2d 18, 20 (Tex.Crim.App. 1972) (where jury asked for a definition of the terms "murder with malice and murder without malice" the trial court properly referred the jury to the charge already given); *Sanchez v. State,* 243 S.W.3d 57, 67 (Tex.App. – Houston [1st Dist.] 2007, pet. ref'd) (when jury asked for clarification on gun enhancement issue, the trial court properly referred the jury to the charge previously given on that subject). The jury here, however, inquired about a specific matter that was not covered by the jury charge. When a jury inquires about matters not already covered in the original jury charge, the trial court has the discretion to provide additional clarifying instructions to the jury, subject to the restriction that the additional instruction not constitute an improper comment on the weight of the evidence or otherwise mislead the jury. *Lucio* 353 S.W.3d at 877.

In *Lucio v. State,* the jury, during its deliberations in the punishment phase, inquired why

24

the defendant's family had not testified on his behalf, asking if there were any laws that prohibited a family member from testifying on the defendant's behalf. In response, the trial court instructed the jury that: "The law does not prohibit a family member from testifying on behalf of a defendant so long as the witness has relevant evidence related to an issue in the case. You have heard all of the witnesses who have been called to testify. Please continue your deliberations." *Id.* at 874. On appeal, the defendant argued that the trial court's instruction was an improper comment on the evidence because it singled out that defendant's family members did not testify on his behalf at trial. *Id*. at 875-76. The Court of Criminal Appeals disagreed, holding that the "general rule that prohibits the court from singling out a particular piece of evidence in its instructions to the jury given prior to jury deliberations does not necessarily apply when the court merely responds to the jury's question concerning a subject identified by the jury alone." *Id*. at 877. The Court noted that "[n]othing in the trial court's answer focused the jury on the fact that none of appellant's family members had testified during the punishment phase[,]" but rather it was the "jury alone [that] focused on that fact, which prompted its note to the trial court[.]" *Id.* Finding no error in the trial court's response, the Court held that the trial court's instruction merely provided a "correct statement of law that family members with relevant evidence were not prohibited from testifying." *Id.*; *see also Green v. State*, 912 S.W.2d 189, 193 (Tex.Crim.App. 1995) (trial court did not err by providing a "narrow and straightforward answer" to the jury's question whether a witness had stated the defendant had "emotional problems[,]" when it advised the jury that the witness did not use that term, because the response was "an objective conclusion based on the record concerning a dispute among the jury about the testimony of a witness").

Likewise, Appellant has failed to point to any particular piece of evidence or evidentiary

issue that the trial court focused on when it gave its supplemental instruction to the jury. To the contrary, the trial court merely responded to the jury's question, and did so in a neutral, straightforward, narrow, and legally-correct manner, advising the jury that the questions it posed did not concern proper matters for the jury's consideration, without expressing any opinion on any other issues relating to Appellant's punishment. We therefore conclude that the trial court's supplemental instruction did not amount to an improper comment on the evidence.

We also reject Appellant's contention that the supplemental instruction conflicted with the trial court's original jury charge which instructed the jurors that they were the "exclusive judges of the facts proved" in assessing Appellant's punishment. The trial court properly instructed the jury in its original charge that it was the exclusive judge of the facts in assessing the length of any prison sentence, but that it was required by statute to set Appellant's sentence between two and twenty years, with the possibility of assessing a probated sentence for any prison term of ten years or less.[10] The trial court further advised the jury that it had the discretion to assess a fine not to exceed $10,000 for each offense. In its supplemental instruction, the trial court did not give any instruction that conflicted with the original charge. In effect, the supplemental instruction only clarified that the jury was not to concern itself with whether any sentence imposed would run concurrently or consecutively and with how long Appellant would be given to pay any assessed fine. In short, no conflict existed between the two instructions.

We also reject Appellant's argument that the supplemental instruction may have misled the jury in assessing Appellant's punishment, or that it caused the jury to believe it had been relieved

---

[10] Both offenses were second degree felonies for which the penalty range was between two and twenty years and a fine not to exceed $10,000. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(c), 481.113(c) (West 2010 & Supp. 2015); TEX. PENAL CODE ANN. § 12.33 (West 2011).

26

of its duties to determine his punishment. There is nothing confusing about the supplemental instruction, and the original charge informed the jury not only that it was required to impose a prison sentence for each offense, but also that it could order the sentences probated. This is precisely what the jury did when it returned its verdicts, assessing three-year probated prison terms for both offenses—terms that, as instructed, were well within the statutory range and below the maximum possible sentence allowed under the statute. Further as instructed, the jury also imposed a fine within the statutorily-permitted range that was well below the statutory maximum. We therefore conclude that the jury was not misled by the trial court's supplemental instruction.[11] We overrule Appellant's third issue.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

May 4, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[11] Because there is no error in the trial court's instruction, it is unnecessary to conduct a harm analysis. *Cortez*, 469 S.W.3d at 598.